The opinion of the court was delivered by
Spencer, J.
John M. Wisdom was a member of the firm of Hewitt, Norton & Co., of New Orleans. He died in 1857, leaving a widow in community, and two minor children, M. N. and W. B. Wisdom. His interest in that firm was liquidated at $125,000, and in payment thereof James Hewitt, of the firm, executed two promissory notes to the order of and endorsed by Hewitt, Norton & Co., for $62,500 each, *53 payable one in five, and one in ten years, with eight per cent interest, payable semi-annually.
To secure the payment of- these notes, said Hewitt executed a special mortgage on his Crescent Plantation, in Ascension parish, in favor of Mrs. Wisdom, widow in community and natural tutrix, and in favor of any other holder of said notes.
These notes represented community property, and were delivered to Mrs. Wisdom, who was owner of one half interest therein, and usufructuary of the other half.
The first of them was paid to her in Europe, in 1864, during her widowhood. In 1866, while still in Europe, she contracted a second marriage with M. O. H. Norton, without having previously convened a family meeting to retain her in her tutorship.
On returning to this State, in 1868, (Eeb.) she filed a petition in the Second District Court of New Orleans, in which she alleged that she was the holder and owner of the second above described note, that the maker, James Hewitt, was dead, and his succession under administration in that court by Mrs. Hewitt, executrix. She prayed for and ob- ■ tained executory process to sell the mortgaged property. The writ was issued, the property sold in March, 1868, to one Bell, for $23,500 cash, and the proceeds, less costs, paid by the sheriff to the Widow Wisdom, then Mrs. Norton, plaintiff in said proceeding.
In Eeb., 1869, Mrs. Wisdom presented a petition to the Second District Court, representing that she had contracted a second marriage as above stated in Europe, where she could not conveniently procure the consent of a family meeting to retain the tutorship of her minor children. She prayed the convocation of the meeting, and that she be retained and confirmed as natural tutrix, etc. The meeting so advised. The court fftmologated its proceedings, and decreed that she be “ retained, maintained, and confirmed as natural tutrix” of the minors. She did not renew her oath or give bond under this decree.
In March, 1869, she In her own right as widow in community with her first husband, and as natural tutrix, brought suit against Hewitt’s estate in the Second District Court, to determine the extent of lands previously sold, and for judgment against said estate for the balance due on the $62,500 note, after crediting the $23,500, proceeds of said sale.
There was judgment in her favor as prayed for, on July 1,1870.
In 1871, Bell executed a mortgage on the Crescent place, and H. S. Buckner, in 1873, as holder of the notes, foreclosed and bought the property.
In March, 1875, Wm. B. Wisdom, the younger son, was emancipated, and the mother, Mrs. Wisdom, made a formal renunciation of the community between her and her said deceased husband.
*54 After these proceedings, the two sons, now sui juris, took a rule in Second District Court, on E. T. Parker (who had been appointed dative executor of James Hewitt’s estate) to compel him to sell the Crescent plantation to pay said note of $62,500, of which they claimed to be the owners. The court dismissed this rule. Thereupon they applied to the Fourth District Court of New Orleans for an.order of seizure and sale of said place, to pay said note. This proceeding was enjoined by Parker, executor, and H. S. Buckner intervened. The Wisdoms then took an order of seizure and sale against Buckner, as a third possessor. Buckner enjoined, and Parker, executor, intervened. These executory proceedings and injunctions were all consolidated and tried together. There was judgment maintaining the process and disallowing the injunctions. Buckner and Parker appeal.
As a preliminary to the discussion of the questions involved in this litigation, and in order to disembarrass the case as much as possible, we will here state that we shall treat the Widow Wisdom as a partner in community with her deceased husband, as owner in her own right at his death of one half of the property, and as usufructuary of the other half. It would be a useless consumption of the time of this court to enter upon an argument to show the nullity of her pretended renunciation. The bare statement of the facts makes it palpable.
The pretensions of M. N. and W. B. Wisdom must fail, unless it be held that the decree of the Second District Court, ordering the seizure and sale of the mortgaged property, was an absolute nullity, for want of jurisdiction.
The eighth section of the act of March 29,1865, relative to district courts for the parish of Orleans, and under which that court was organized, enacted “that the Second District Court shall be strictly a nrobate court, and shall have exclusive jurisdiction of all succession and probate causes, and all appointments that may be necessary in the administration of estates, all matters relative to minors, to persons interdicted, and to absentees, shall be made and carried on in said Court.”
When we turn to the Code of Practice to ascertain in what “ probate jurisdiction” consisted, we find that by Art. 924 probate courts have exclusive power,
5. “ To grant orders to make inventories and sales of the property of successions which are administered by curators, executors, etc.”
13. “ To decide on all claims for money which are brought against successions administered by curators, executors, etc., and to establish the order of privilege and mode of payment.”
Art. 983. “ All debts in money which are due from successions administered by curators, executors, etc., shall be liquidated, and their payment enforced by the court of probate of the place where the succession was opened.”
*55 Art. 990 makes it “ the duty of the several judges of probate, on' •the application of the creditors, or any creditor,” to order the sale of ■“ so much of the property of the said estate as is necessary to pay the •debts, etc.”
Art. 991 makes it their duty “ on the application of the creditors, ■or any creditor thereof, whose debt shall not then be due, to sell so much of the estate as will be sufficient to pay the claim or claims of the •creditors who shall make the application,” on terms of credit corresponding to the maturity of the claims.
Art. 992 declares these provisions applicable to all successions accepted with benefit of inventory, and to all successions administered by ¡administrators, etc.
It is conceded that the succession of Hewitt was opened in the parish of Orleans, and was being there administered in the probate court thereof, to wit: the Second District Court.
Under the statute of 1865, and the articles of the Code of Practice •above quoted, it is therefore undeniable that the Second District Court -was the tribunal before which the law had directed “ all debts in money of the succession of Hewitt to be liquidated,” that it was the tribunal •“to decide on all claims for money brought against said succession,” that it was the tribunal to “ enforce their payment,” and to order “ the ■sales of the property” thereof to pay its debts, that this order of sale could be granted on the application of any creditor, in order to have property sold to pay his debt.
Union Bank vs. McDonogh, 7 A. 232.
Art. 87, C. P,., provides that “in order to ascertain whether a judge •be competent or not, three points must be taken into consideration :
1. The object or amount in dispute.
2. The person of the defendant.
3. The place where the action is to be brought.
Art. 88. “ To determine on the competency of a judge as relates •to the object, or amount in dispute before him, it is necessary to examine what are Ms powers, what is the nature of the cause, and what is the ■amount of the same.”
Let us test the jurisdiction, the competency of the Second District ■Court, by these rules.
There is no dispute as to its jurisdiction of “ the person” of the defendant, i. e., of the succession of Hewitt, nor is there any controversy ¡as to “the place where the action is to be brought. There remains -therefore to consider” the object or the amount in dispute.
We have seen “ what are the powers” of the probate courts. It is “to liquidate and enforce the payment” of money debts due by successions — “to decide on all claims for money” brought against them, “to *56 order the sale of their property” on “the application of the creditors Or of any creditor” thereof, and to establish the order of privilege, and the mode of paying. We find, therefore, the most ample power in the-Second District Court to direct by its decree the sale of the property of the succession to pay the debts thereof. We find that “the nature of the cause” brought before it was to have “ a claim for money,” founded-on an authentic contract of the deceased, enforced and paid by a sale of. his property, and that its “ amount” was within the cognizance of the court.
The substance, the gist, of the plaintiff’s demand, the result sought, was the enforcement of a money demand against a succession, by a sala of property specially mortgaged and pledged to secure it. The court, had the power, the jurisdiction, to accomplish and decree that result, that end.
The essence of the decree rendered was that the Crescent plantation, the property of the succession, should be sold by the sheriff to pay the special mortgage debt held by plaintiff. This much the court clearly had the power to do. If the procedure, the pleadings and methods, pursued to obtain this decree were irregular, or illegal, the decree itself was not thereby rendered void. It might so vitiate the decree as to-render it voidable by appeal or action of nullity, but until so set aside it must have effect. Nor can we see that the fact that the plaintiff may have demanded, and obtained incidentally, things to be done which she. had no right to have done, can destroy the effects of the decree, as to those matters properly embraced within it. Thus if it be conceded that the court had the power to order the sheriff to sell the property which was in its own custody, but had no right to order him to seize it,, we are at a loss to see why the sale should be rendered null and void by this improper but harmless procedure, utile per inutile non vitiatur. If a court decree more to be done than it had a right to decree, it does not necessarily follow that its decree is void as to the things which it-properly and lawfully ordered.
The case of “ Bigelow vs. Forrest,” 9 Wallace 339, cited and relied, upon by counsel, is, we think, strongly illustrative of this point. In that case the inferior court under the confiscation acts had condemned and sold the fee simple of certain lands of Commodore Forrest. After his-death his heir brought suit against the purchaser, who defended on the ground that the decree ordered all the estate of Forrest to be sold, and that although the decree might be erroneous«it was not void. Held that the decree transcended the jurisdiction of the court, and was void, so-far as it exceeded, the authority given by'the confiscation acts. But the decree was valid so far as it ordered the sale of the life interest. So we-, say, admitting-for argument sake that the judge illegally directed the *57 seizure of the property, that could not strike with nullity the sale which he properly ordered.
To the extent that the decree exceeds the jurisdiction, it is without effect. If after eliminating from the decree its illegalities there remains the recognition and the order for the enforcement of a substantial legal right, why should it be null and void as. relates to that right ? In the ease before us why should an order to sell succession property to pay succession debts be stricken with nullity simply because the court directed its executive officer to take the real estate to be sold into his nominal custody ? More especially when the property thus directed to be taken by the court was already in its own custody as a court of probate ? -
It can not be that our estates depend upon such slender threads as these.
It is manifest that the Second District Court had jurisdiction of the parties, and of the subject matter of the suit. Says the Supreme Court of the United States in Thompson vs. Toulme, 2 Pet. 166 : “ The general and well-settled rule of law in such cases is, that when proceedings are collaterally drawn into question, and it appears upon the face of them that the subject matter was within the jurisdiction of the court, they are voidable only: the errors and irregularities, if any exist, are to be corrected by some direct proceeding, either before the same court to set them aside, or in an appellate court.”
But it is said that the executory proceeding taken in the Second District Court was a real action, and that by the express terms of the second clause of Art. 983, C. P., “ Actions of revendication and other real actions” shall be instituted in the courts of “ ordinary jurisdiction.”
A claim for money secured by mortgage is not a real right, a jus in re. It is a jus ad rem, giving an action in rem. The action is in rem, against the thing; but so are all proceedings in probate courts for the sale of real estate. Such proceedings are against the property, not the person or heirs of the debtor. “ In decreeing the sale of real estate of a deceased person, the court acts in rem.” Freeman on Judgments, see. 608. See, also, Wyman vs. Campbell, Lee vs. Campbell, Couch vs. Campbell, 6 Post, (Ala.) 219, 249, 262. where it is said “ the proceedings of the' Orphans’ Court are in rem against the estate of the intestate, and not in personam.”
And this is equally true of the probate courts in this State. The proceeding is against the property, not the person of the debtor, the property being in the custody of the court through its officers. To say, therefore, that Art. 983 forbids actions in rem to be brought- in probate courts, would be to strip them of nearly the last vestige of their jurisdiction in succession matters.
*58 We hold, therefore, that the decree of the Second District Court directing the seizure and sale of the Crescent plantation, at the suit of Mrs. Norton, in 1868, was not a nullity. That it was the decree of a court having jurisdiction of the subject matter, and of the parties; and that any irregularities or illegalities in the mode of obtaining that decree could only be corrected by appeal, injunction, or action of nullity.
It is elementary now, that innocent third persons purchasing property under such a decree are protected, and can not be affected by its subsequently ascertained irregularities. Thompson vs. Toulme, 2. Pet. 166 ; Lalanne vs. Moreau, 13 A. 437 ; 10 Peters 449 ; 18 How. 497 ; 7 R. 66; 2 A. 468; 14 A. 154; 18 A. 485.
Mrs. Norton had possession of the note, was the owner of one half of it, and had been usufructuary of the other. It was endorsed in blank and secured by mortgage in favor of any holder. She alleged her ownership, and the decree recognized it. The note being payable to bearer, a payment to her, made bona fide, would have discharged the debt. R. C. C. 2145, No. 1. If her children have any rights, it is against her, for misappropriation of their funds. They have made no effort to obtain their dues from her; have not called her to account as their tutrix. Who knows but that on a settlement she would owe them nothing, or, at least, much less than they are claiming here ? There is little equity in their demands ; it is even questionable whether she was not absolute owner of the note. She certainly owned one half of it, and it might be argued very plausibly that under Act. 549, R. C. C., her usufructuary right carried with it the ownership, as the thing subject to the usufruct was of a nature not to be used without being converted into money or consumed. See Marcadé, vol. 2, p. 461-2. Demolombe, Verbo Usufruct ; p. 235, sec. 287.
Under the view we have taken, it is perhaps necessary to decide whether the Second District Court under the act of 1865 could legally and technically order the seizure and sale of mortgaged property in its custody. Certain it is, there is no law, no statute to the contrary.
We have examined all the cases cited, for and against the proposition. In Lowry vs. Erwin, 6 R. 207, the court says that courts of ordinary jurisdiction are without authority, and intimates that courts of probate are equally so.
In Collier vs. Stansborough, 6 R. 234, it is held that courts of ordinary jurisdiction can not issue the writ against successions, and intimates that the probate courts alone have the power.
In Citizens’ Bank vs. Buisson, 7 Rob. 507, the court, founding itself on the charter of the bank, recognizes the right of courts of ordinary jurisdiction to issue it.
In Union Bank vs. Marigny, 11 R. 211, on the strength of the bank’s *59 ■charter, the same conclusion is reached, the court saying that probate courts had not the power. But this was obiter.
In Boguille vs. Faille, 1 A. 205, it was finally decided and has ever ■since been agreed to, that courts of ordinary jurisdiction have the power, but it is not denied to probate courts.
In Mason’s Ex. vs. Fuller, 12 A. 68, it is said that the creditor can apply to the probate court for an order of seizure and sale. In Williams vs. Hunter, 13 A. 477, a similar doctrine is announced. In Vincent vs. D’Aubigne, 19 A. 528, which was an action to annul a sale made under executory process from Second District Court (probate), the question was not raised or decided.
In State vs. Judge Third District Court, 20 A. 311, the court decided "that under the charter of the Bank of Louisiana courts of ordinary jurisdiction could issue the writ, and it is intimated that probate courts can not, but this last was obiter.
In Graham vs. Markey, 22 A. 267, the court perpetuated an injunction against an order of seizure and sale, issued by the Second District Court against succession property, citing as authority Bank vs. Marigny, 11 R. 211, and State vs. Judge Third District Court, 20 A. 311.
We thus see, that while it is now settled that courts of ordinary jurisdiction have the power to issue writs of seizure and sale against succession property, there is but one solitary ease, that of “ Graham vs. Markey,” 22 A. 267, where'the court has directly decided that courts of probate have not the power.
The decision in that case is very brief, and not satisfactory. The weight of authority and of reason seems to be against its correctness. Why should not that power exist in courts created for and specially ■charged with the settlement of successions; with the ascertainment, liquidation, and 'enforcement of money demands against them ; with the ■classification and ranking of such debts, and into whose custody the law places the property of estates ? True, the law does not expressly grant the power, nor does it any where forbid it to them. No more does it expressly grant it to courts of ordinary jurisdiction in matters of succession. Philosophically, it would be more rational to vest such power in the probate courts, which are alone charged with the settlement of ■successions, thereby avoiding the confusion which inevitably results from the intervention of the ordinary courts, which have no power to rank and classify the debts of successions. 11 R. 77.
The judgment below is erroneous. It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and reversed; and it is now ordered and decreed that the executory proceedings sent out by M. N. and W. B. Wisdom herein are set aside, and the injunctions taken against said proceedings by H. S. Buckner and E. T. Parker, *60 executor, are hereby maintained and made perpetual, and that M. N. and W. B. Wisdom pay the costs of both courts.